IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SECURA INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-cv-04054-SLD-JEH |
| | ) |
| RICK R. PLUMB, d/b/a SUPERIOR | ) |
| HOME IMPROVEMENT, and | ) |
| LINDA J. PLUMB, | ) |
| | ) |
| Defendants. | ) |

# ORDER

Plaintiff Secura Insurance Company seeks a declaration that it has no duty to defend or indemnify its insured, Defendant Rick R. Plumb, d/b/a Superior Home Improvement, in a lawsuit brought against Superior by Defendant Linda J. Plumb in Illinois state court. For the following reasons, Plaintiff's Motion for Summary Judgment, ECF No. 19, is GRANTED.

## BACKGROUND[1]

In 2005, Superior constructed a single family home in Taylor Ridge, Illinois. Superior subcontracted foundation work to Alliance Foundations, Inc. On February 2, 2006, Linda Plumb, Rick Plumb's mother, acquired ownership of the home. On or about February 11, 2008, Linda Plumb discovered that the basement was moving out from underneath the house, causing external and interior damage. On some prior date that he cannot recall, Rick Plumb had noticed some cracks in the drywall which he attributed to the fact that "it's a new house; it's settling." He did not realize that the foundation was actually moving until he saw a crack form between the

---

[1] Except where particular evidence is cited, material in this section is drawn from the parties' statements of undisputed facts.

1

wall and the floor in the basement. As a result of the damage, the County of Rock Island declared the premises unsafe for occupancy and ordered repairs to be completed.

On June 7, 2010, Linda Plumb filed suit against Superior in the Circuit Court for the Fourteenth Judicial Circuit, Rock Island, Illinois, alleging breach of an implied warranty of habitability. Compl., Ex. 1, ECF No. 1. Superior in turn filed a third-party complaint seeking contribution from Alliance on the grounds that the damage to Linda Plumb's home resulted from Alliance's allegedly negligent foundation work. According to Linda Plumb, the total cost of stabilizing the basement and repairing or replacing other damaged portions of the home is $164,378.00. L. Plumb Decl. ¶ 6, ECF No. 19-1.

Secura had issued Superior a "Target Contractor" insurance policy, providing "contractors businessowners" coverage. Pl.'s Mot. Summ. J., Ex. F at 4, ECF No. 19-1. Among its relevant provisions, Superior's policy provided that Secura would cover "business liability" as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies." The policy applies to "bodily injury" and "property damages" only if (1) the injury or damage "is caused by an 'occurrence' that takes place in the 'coverage territory'"; and (2) the injury or damage "occurs during the policy period." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It defines "property damage," in pertinent part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Finally, it defines "your work" as including both "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." Secura

2

had issued Superior this policy for the period of October 27, 2005, to October 27, 2006, but later cancelled the policy, due to nonpayment of premium, effective May 19, 2006.[2]

Superior referred Plumb's claim to Secura for defense and indemnification. Secura preliminarily agreed to defend Superior against Plumb's suit, while simultaneously reserving its right to seek a declaration that Superior's policy did not cover these circumstances. While simultaneously defending Superior in state court, on June 21, 2013, Secura filed the instant suit seeking a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57 that Secura has no obligation to defend or indemnify Superior with respect to Plumb's lawsuit. Compl. 1–7. The Court's jurisdiction was invoked pursuant to 28 U.S.C. § 1332. On March, 2013, the Court denied Linda Plumb's motion to dismiss or stay Secura's suit in deference to an ongoing, parallel state court adjudication, holding that the state and federal actions here were not "parallel." *See* Mar. 26, 2013 Order 3–5, ECF No. 28. Now before the Court is Secura's Motion for Summary Judgment, ECF No. 19.

## DISCUSSION

**I. Legal Framework**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[2] In her statement of facts, Linda Plumb maintains that Superior continued to send Secura premium payments after it missed the May 2006 payment. However, Plumb provides no record citation in support of this asserted fact, and the Court can find no support in the evidentiary materials she submitted. Accordingly, the Court will consider the cancellation of Superior's policy on May 19, 2006, an undisputed fact for purposes of this motion. *See* Fed. R. Civ. P. 56(c)(1)(A), (e)(2); Local Rule 7.1(D)(2)(b)(2).

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). There can be no genuine issue as to any material fact, however, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Additionally, when there is no material factual dispute, contract interpretation is a question of law that the court may decide on summary judgment. *Citadel Group Ltd. v. Wash. Reg'l Med. Cntr.*, 692 F.3d 580, 587 (7th Cir. 2012).

A court compares the allegations in the underlying complaint with the relevant provisions of the insurance policy to determine whether the insurer has a duty to defend its insured. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1016–17 (Ill. 2010). The insurer has a duty to defend where the facts alleged in the underlying complaint "fall within, or potentially within, the policy's coverage." *Id.* at 1017. The duty-to-defend threshold is low: the complaint need present only the possibility, not probability, of recovery under the policy. *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1006 (Ill. App. Ct. 1991); *W. Cas. & Sur. Co. v. Adams Cnty.*, 534 N.E.2d 1066, 1068 (Ill. App. Ct. 1989). This duty is thus broader than an

4

insurer's duty to indemnify. *See Pekin Ins. Co.*, 930 N.E.2d at 1017. The duty to indemnify does not arise until the insured becomes obligated to pay damages in the underlying action, *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 163 (Ill. 1987), and then only if the insured's activity and resulting damage "actually fall within" the policy's coverage, *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 492 (Ill. 2001).

In interpreting insurance policies, "[a] court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Pekin Ins. Co.*, 930 N.E.2d at 1017 (quoting *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997)). Provisions that limit or exclude coverage are interpreted liberally in the insured's favor. *Koloms*, 687 N.E.2d at 75. Terms are given their plain and ordinary meaning unless they are susceptible to more than one meaning; such ambiguous terms are construed strictly against the insurer. *Id.* The construction of an insurance policy is a question of law. *Id.*

When an insurer contends that its insured is not actually covered by a policy, the general rule of estoppel dictates that the insurer must defend the suit against its insured under a reservation of rights or seek a declaratory judgment that there is no coverage. *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1230–31 (Ill. 1999). If the insurer fails to follow either course, it will be estopped from raising policy defenses to coverage. *Id.* at 1231. Further, an insurer's delay in bringing its declaratory action may be grounds for estoppel. *Cent. Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806, 810 (Ill. App. Ct. 1991). "[A] liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is complete before contesting the question of coverage." *Id.* (quoting *Reis v. Aetna Cas. & Sur. Co.*, 387 N.E.2d 700, 704 (1978)). An insurer must seek a declaration or undertake

defense of its insured within a reasonable time after the insured seeks protection. *Korte Constr. Co. v. Am. States Ins.*, 750 N.E.2d 764, 770 (Ill. App. Ct. 2001).

**II. Analysis**

Secura moves for summary judgment on the grounds that the alleged injury to Plumb's home occurred after the period protected by the insurance policy and therefore fails to trigger coverage. Pl.'s Mot. Summ. J. 1–2. Secura also argues that there was no "occurrence" resulting in "property damage" within the meaning of Superior's policy.[1] *Id.* Plumb and Superior contest these claims, and Plumb raises two affirmative defenses: under Secura's interpretation, the insurance agreement is illusory and against public policy; and Secura should be estopped from denying coverage now after waiting more than three years after Plumb sued Superior to seek a declaration of no coverage. Plumb Resp. to Mot. Summ. J. 10–13, ECF No. 23. Because the Court finds that Defendants cannot establish that the alleged injury occurred during the period of policy coverage, the Court does not reach the "occurrence" and "property damage" issues. Further, because there was therefore no policy in effect when the damage for which Superior seeks coverage occurred, the Court need not determine whether the expired policy was illusory.

    1.  **Injury Occurred Outside Coverage Period**

Secura argues that, because Superior's policy lapsed on May 19, 2006, and Defendants' evidence does not indicate that the foundation began moving before February 8, 2008, the property damage at issue did not "occur[] during the policy period," as Secura's policy requires for indemnification. While Defendants acknowledge that the ultimate shifting of the foundation and home occurred in February 2008, they argue that there is a question of fact as to whether the physical damage did occur during the policy period.

---

[1] Secura has withdrawn its argument that policy Exclusion O, which concerns the withdrawal or recall of work or products, also defeats coverage in this case. Pl.'s Mot. Summ. J. 13; Pl.'s Reply to Superior Resp. 9, ECF No. 27.

6

Analogizing to *Zurich Insurance Co. v. Raymark Industries, Inc.*, an Illinois Supreme Court case concerning asbestos exposure, Linda Plumb argues that the property damage occurred when Alliance installed the allegedly faulty foundation within the policy period. *See* 514 N.E.2d at 159–60. *Zurich Insurance*, however, turned on the insurance policy's definition of "bodily injury," which included "sickness," and the nature of asbestos exposure. *Id.* at 160–161. "Sickness," the court found, occurred as soon as a person "suffers from a disordered, weakened or unsound condition," and therefore prior to clinical manifestation of a disease. *Id.* at 161. Moreover, the court noted that merely inhaling asbestos fibers injures lung tissue. *Id.* at 160. The circumstances of this case are not analogous. Superior's policy defines "property damage" in pertinent part as physical injury to tangible property.[2] This definition provides no terminology that, as in *Zurich Insurance*, can be interpreted to mean that a preliminary vulnerable condition prior to actual breakdown suffices to constitute physical injury. *See id.* at 161.

Moreover, unlike asbestos, a defective foundation is not necessarily injurious immediately upon installation. The Illinois Supreme Court has held that "physical injury to tangible property," in the context of contractor liability policies, requires "an alteration in appearance, shape, color or in other material dimension." *Travelers Ins. Co.*, 757 N.E.2d at 502. *Travelers Insurance* held that defective plumbing systems caused "physical injury" to their host buildings only when they malfunctioned and damaged property, not merely due to being installed. The *Travelers Insurance* Court distinguished asbestos-pipe cases, where mere installation resulted in injury, because asbestos products "disseminate toxic fibers upon installation" and continuously contaminate the building thereafter. *Id.* at 306 (discussing *U.S. Fidelity & Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (1991)); *see Stoneridge Devel. Co., Inc.*

---

[2] Defendants do not appear to argue that the second prong of "physical damage" under Superior's policy, i.e., loss of use without physical injury, applies. Such an argument would be unavailing because there is no evidence that Plumb lost use of her home, if at all, until it shifted off its foundation.

7

*v. Essex Ins. Co.*, 888 N.E.2d 633, 655 (Ill. App. Ct. 2008) (explaining that issue in *Wilkins Ins. Co.* "was a defective product that immediately began damaging the buildings and their contents in an ancillary manner, through its health risks, rather than defective workmanship that damaged solely the buildings"). By contrast, the defective plumbing systems at issue in *Travelers Insurance* did not incorporate an immediately and inherently toxic substance into buildings upon installation; the plumbing systems' defect was their "failure to perform as intended" due to a propensity for leaking prematurely. *Id.* at 306. Accordingly, the plumbing system caused physical damage only when it malfunctioned and damaged a building. *Id.* at 312. Here, fully crediting the allegations of faulty foundation work by Alliance, Plumb's foundation was not immediately hazardous upon installation. Injury to her home did not occur until the foundation "failed to perform as intended" by permitting the building to shift and break apart.

Defendants provide no evidence from which a reasonable trier of fact could find that such shifting and breaking occurred prior to the policy's cancellation on May 19, 2006. Rick Plumb testified to seeing symptomatic cracks in the building's walls prior to the home's shifting in February 2008, but he could not place a date on that event. Defendants offer no evidence establishing when Plumb made that observation; their first evidence of damage with a date attached is their February 2008 discovery that the foundation was moving. *See Nat'l Farmers Union Prop. & Cas. Co. v. DeGroate Petroleum Serv., Inc.*, 2013 IL App. (3d) 120917-U, 2013 WL 5745124, at *5 (Oct. 18, 2013) (finding no duty to indemnify because injury occurred outside coverage period where no admissible evidence established that contamination occurred prior to policy's expiration). On its own, Rick Plumb's failure to recall the date he first witnessed damage—and thus possibility that it could have occurred while the policy was still in

effect—is insufficient to raise a genuine issue of fact as to when he observed the damage.[3] *See, e.g.*, *Brown v. Chi. Transit Auth. Ret. Plan.*, 197 F. App'x 475, 481 (7th Cir. 2006) (holding that plaintiff's testimony that she did not recall seeing letters prior to litigation was insufficient to raise a genuine factual issue as to their authenticity); *Stedman v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan, P.C.*, No. 94-1587, 1995 WL 431385, at *1 (7th Cir. July 20, 1995) (holding that plaintiff's inability to recall imposing a time limit did not controvert testimony that he did); *Posey v. Skyline Corp.*, 702 F.2d 102, 105–06 (7th Cir. 1983) (holding that plaintiff's testimony that he did not see or recall notices did not create a genuine issue of material fact as to whether notices were posted); *Rocket v. Marten Transp. Ltd.*, No. 99 C 3957, 2001 WL 1155256, at *6 (N.D. Ill. Sept. 28, 2001) (holding that plaintiff's failure to recall his alleged misconduct did not create a genuine factual dispute as to its occurrence).

Defendants provide no evidence to support a factual finding that the shifting foundation damaged the home prior to the policy's cancellation on May 19, 2006, and cannot establish that the foundation's mere installation was sufficient to trigger policy protection. A reasonable trier of fact therefore could not find that Superior's claim arose during the period protected by Secura's insurance.

### 2. Estoppel Defense Is Inapplicable

Linda Plumb argues that Superior's alleged delay in bringing this declaratory action warrants estoppel under Illinois precedent. Ten months following notice of the injury and almost seven months after acknowledging its duty to defend its insured under a reservation of rights is too long for an insurer to "stand on the sidelines" before seeking a declaration of no coverage.

---

[3] The policy's definition of "occurrence" contemplates gradual damage due to continuous exposure to harmful conditions. *See* Pl.'s Mot. Summ. J., Ex. F at 45, ECF No. 19-1. Defendants' claim, however, is not defeated by the undisputed evidence that the home's shifting off of its foundation and related damage was not observed until 2008, but by their inability to provide any evidence of gradual shifting or damage beginning within the policy period.

9

*Kammerling*, 571 N.E.2d at 809–10. Similarly, an insurer's nineteen month delay after denying coverage before filing its declaratory judgment action was unreasonably long, justifying estoppel. *Econ. Premier Assur. Co. v. Faith in Action of McHenry Cnty.*, 2013 IL App. (1st) 112329-U, 2013 WL 1227118, at *13 (Ill. App. Ct. Mar. 26, 2013). Relying on the delay periods in *Kammerling* and *Faith in Action*, Plumb argues that Secura's three-year delay from her filing of the underlying complaint to its filing of this declaratory action is even more unreasonable and deserving of estoppel. Plumb Resp. to Mot. Summ. J. 13.

While Secura waited three years to file this suit, however, it is undisputed that Secura agreed to and has been defending Superior under a reservation of rights in the state action all along. Therefore, *Faith in Action* and the cases upon which it relies—in which the insurer neither sought a declaration nor preliminarily defended its insured during the alleged unreasonable delay period—are inapplicable. *See Faith in Action of McHenry Cnty.*, 2013 WL 1227118, at *12–13 (citing *W. Am. Ins. Co. v. J.R. Constr. Co.*, 777 N.E.2d 610, 619–20 (Ill. App. Ct. 2002); *Korte Constr. Co.*, 750 N.E.2d at 769). *Kammerling* is distinguishable for a similar reason: the insurer there formally agreed to defend its insured, but the court found that in fact the insurer took no action to do so while the insured's excess insurance carrier mounted its legal defense. *See Kammerling*, 571 N.E.2d at 809–10. These cases punish insurers who take no action for an unreasonable period of time; Plumb cites no authority requiring that an insurer fulfilling its obligation to defend file its declaratory action within any specified period. Secura satisfied the general rule by undertaking to defend Superior under a reservation of rights. *See Martin*, 710 N.E.2d at 1230–31. Estoppel does not apply here.

### 3. Secura Has No Duty to Defend

The foregoing analysis establishes that Secura would have no duty to indemnify Superior for damage occurring after the policy expired, if Superior were held liable in the underlying state suit. As noted, however, the duty to defend is broader: it exists "unless 'the insurance cannot possibly cover the liability arising from the facts alleged' and the terms of the policy clearly preclude coverage under all of the facts consistent with the allegations." *Pekin Ins. Co.*, 912 N.E.2d at 256 (quoting *Ill. Emcasco Ins. Co. v. Nw. Nat'l Cas. Co.,* 785 N.E.2d 905, 908 (Ill. App. Ct. 2003)). There is no possibility of coverage, and therefore no duty to defend an insured, where the alleged injury occurred outside of the policy's period of effect. *See Nat'l Farmers Union Prop. & Cas. Co.*, 2013 WL 5745124 at *5; *cf. Zurich Ins. Co.*, 514 N.E.2d at 163 (noting that when an insurer has exhausted its indemnity limits, it "*cannot* ultimately be obligated to indemnify the insured," and thus has no duty to defend either) (emphasis in original).

No matter what the state court determines as to Superior's liability for the damage to Plumb's home, Defendants present no evidence to establish that the damage occurred during the period that the insurance policy was in effect. Therefore, the policy "cannot possibly cover" Superior's claim. *See Pekin Ins. Co.*, 912 N.E.2d at 256. In the absence of a genuine dispute of material fact as to whether Superior's claim is covered by its policy with Secura, or possibly could be, Secura is entitled to summary judgment in its favor. *See* Fed. R. Civ. P. 56(a). The Court finds that Secura has no duty to defend or indemnify Superior in the underlying suit brought by Linda Plumb.

## CONCLUSION

Plaintiff Secura Insurance Company's Motion for Summary Judgment, ECF No. 19, is GRANTED. The Court finds that Secura Insurance Company has no obligation to defend or

indemnify Defendant Rick R. Plumb, d/b/a Superior Home Improvement, in Defendant Linda J. Plumb's Illinois state court suit against Superior Home Improvement for home damage caused by a defective foundation. The Clerk is directed to enter judgment and close the case.

Entered this 8th day of September, 2014.

_____s/ Sara Darrow_____  
SARA DARROW  
UNITED STATES DISTRICT JUDGE